The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. This is our case number 4-24-0314, Sundermeyer v. Rogers, Ruddy, Mix, and Materials, Inc. and Robert A. Rogers. Counsel for the appellant, please state your name. James Farnan, F-A-R-N-A-N, on behalf of the appellant. Thank you, sir. And counsel for the appellee, please state your name, sir. Steven Rehfeldt, R-E-H-F-E-L-D-T, for the appellant. Thank you, counsel. Each attorney will have 20 minutes to argue, and then the appellant will be permitted a five-minute rebuttal. So with that, Mr. Farnan, you may proceed, sir. Thank you, Your Honor, distinguished bench and counsel. This is a premises liability case. A motion to dismiss was granted by the trial court, and at issue is the standing in which my client, who is now deceased as a result of this accident. Briefly, the facts involve a quarry. He originally, as a 12-year-old boy, lived across the street from the quarry, and on the night in question, he walked through a hole or a gap of the quarry that was unfenced and tragically fell to his death. The issues that are on appeal is the viability or the prudence of the granting of said motion to dismiss. We feel that as the appellant, there is a viable question of fact for the jury. Certainly, I'm not going to waste time or the court's time or counsel's time arguing the status of the young man, the appellant. He clearly, and we've conceded in prior pleadings that he was a trespasser. He was on the property of the landfill late at night, early in the morning. However, it is our position to do that. Mr. Farnham? Yes. If I may, on appeal, you make arguments as if the defendants filed their motion to dismiss pursuant to Section 2619 of the Code of Civil Procedure, but the defendants filed their motion pursuant to Section 2615. Why are you arguing that we should treat that motion to dismiss as a motion pursuant to 2619 as it appears that the defendants, I mean, aren't they challenging the legal sufficiency of the complaint based on your allegations of fact? Yes, we feel that there was discovery that needed to be done. In fact, early on in the case, prior counsel, the attorney who was handling the case, filed a motion for leave to conduct discovery, which does not seem to have been addressed by the court. The court addressed the motion to dismiss. We feel that there was discovery that is necessary, specifically the knowledge of the young man. He grew up across the street. It's our allegations that this discovery conducted would have shown that he was familiar with the area in which he entered that fence as a young boy, and 10 years later as a college student coming back to the area, it was severely eroded and it changed the condition of the property. So, we feel it's more of a situation where additional discovery... Counsel, excuse me. What affirmative matter outside of the complaint are you suggesting they were relying upon that would make this something to be considered under 619 and not 615? I don't understand how... I'm not following the reference to the discovery motion. They appeared to have filed this under 615. Yes, Your Honor. I mean, you're correct in that the argument is based under 2615, and that was an error on my part. I guess you could... I would concede that. I don't think it changes the position that we are of the mindset there that the motion to dismiss should not have been granted because no discovery was completed. There were sufficient allegations in the amended complaint made concerning the habitual acquiescence, the prior break-ins, the three separate break-ins that were cited in the amended complaint. And with regards to those three separate matters, if you will, I guess my question is how are we to construe those three incidents that you've included in the first amended complaint when they took place over a period of 20 years, and it does appear that the landowner, you know, called the police, was not acquiescing to these trespassers being on the quarry property? Well, my response to that, Your Honor, would be that there was nothing done in any of those intervening years to cure the defect that led to my client's passing. Specifically, the gap in the fence was never addressed after any of those instances. Now, admittedly, one of those instances was on the other side of the quarry, I believe, at the warehouse or the storage facility that had nothing to do with the outer barriers, but one is specifically the closest in reference, I believe it was in 2013, involved the penetration through the fence and the fence line had nothing to do with the business area or the offices of the landfill on the other side where one of them did indeed take place. We're not suggesting that is evidence of the habitual acquiescence, but to address that head-on, that would certainly, in our opinion, be an issue of fact whether or not that was evidence enough to at least defeat any motion on a habitual acquiescence theory based on that prior knowledge or at least two separate prior knowledges, no doubt removed from our instance, but the last one was five years, I believe, prior to the passing of my client. So I have a question for you about sufficient evidence. I have a question about your brief in which you raise the excavation fence act. It seems that you're raising that and asking us to consider that and reverse the trial court's base thereon, is that correct? Well, yes, only to the extent, Your Honor, that we clearly in our complaint allege that they failed to erect a fence without specifically referencing the statute itself, but I don't think it's a leap for a jury to consider the fact that they did not adequately fence in the entire quarry to be a violation of that statute. There's allegations throughout the about the failure of them to erect a fence. You, at the trial level, never cited that act of the trial court, did you? That's correct, Your Honor. Well, one of the problems with your position is you're asking us to reverse the trial court based on an argument never heard. Why should we do that? Well, so again, the mere fact that the lack of fence that is required, not only by statute, but under due diligence, the new or should have known standard that they are held to, even under a straight willful and wanton, he's clearly a trespasser, but we feel that the there's a gap in this fence that they never remedied and that we have clearly alleged that there's a failure or they did not properly erect a fence around the entire property falls into the category of the defense act. So the trial court should have surmised that on its own without your mentioning it and we should reverse the trial court for its failure to surmise that? To the, Your Honor, to the extent that we have alleged that they've failed to erect a fence, I certainly think falls into the category of the violation of that statute. We get that, but what we're asking is if you never discussed this or argued it before the appellate court, or excuse me, before the trial court, how can we address it now? Because the never had an opportunity to rule on that. Right. The allegation is in a general sense that the failure to erect a fence, while specifically the fence act was not cited in either the original complaint or amended complaint, the mere allegation that we've made the failure to comply with that statute. My position on that, Your Honor, is that the facts will support that argument at the trial level. Counsel, so if I'm clear, are you arguing that the defendants alleged failure to erect the fence is then an act of nonfeasance or an act of misfeasance? It is absolutely an act of nonfeasance, Your Honor. Excuse me. It is absolutely an act of misfeasance, Your Honor. I misspoke again. The misfeasance is the improper performance of erecting the fence. They put up the fence, but they just put it up improperly. Not a nonfeasance, i.e. a total omission of the act. Our position would be that a nonfeasance would be they didn't erect a fence at all. But wouldn't the misfeasance be that they incorrectly or negligently somehow put up the fence, but the fact that they didn't fence a portion of that, isn't that clearly an argument on nonfeasance? I would say it would be an argument on misfeasance, Your Honor, because it was done improperly. It was not put up properly. They did not properly entirely fence the quarry. It wasn't put up at all, so how could it be improperly put up? No, there were sections of the fence. The record shows that that quarry was partially fenced. The area that Mr. Sundermeier entered, there was a gap in that fence. So the section he entered the quarry was non-fenced, but other portions of the quarry... How large was the... You're referencing as a gap, and then you're saying it's an area that wasn't fenced. So where in the record would I be able to find whether this was a couple feet gap, or whether it was a larger area that was not fenced? I believe there's photos of the area, Your Honor, that... Do you have an estimate of the length of that area? I believe the estimate... My best estimate on that would be two to three feet, Your Honor. Thank you. Counsel, I have a question regarding the habitual acquiescence. So you outlined three instances over 20 or 21 years of people entering the property. What else can you tell me did the landowner know in order for this to qualify as habitual? Or is it your position that these three instances over 20 years was enough? Well, yes, my position currently is that those three instances are enough. But in parcel with my earlier comments about the lack of discovery that was allowed to proceed in this case clearly would have indicated through testimony of various friends and family members, whether or not the landowner knew, it would only have been knowledge that was obtained in depositions or discovery directly with their landowner and what they knew. I can't answer to what the landowner specifically knew other than those three instances we are going to cite through police reports, etc. But there certainly would have been other evidence brought to light if discovery would have allowed to proceed that would have shed light on that question, Your Honor. You can continue with your argument, counsel. I'm sorry, Your Honor. I'm sorry, Justice Landon. Do you have a question? Yes. Other than the fact that it was dark outside, how are you alleging the open and obvious risk was hidden? The open and obvious risk, it's not the fact that the young man did not know a quarry was there. The fact is that the open and obviousness applies to the quarry itself. He clearly knew the quarry was there. In fact, that's why they went there. What our allegation is, is that it is not open and obvious that the erosion that took place throughout the years of when he was there as a young man, removed 10 years later or thereabouts when he came back as a college young man, that that erosion to him was not open and obvious. And so you plug that in your amended complaint, the erosion? The specific terminology of the erosion? No, Your Honor. Just again, in general sense that the condition of the quarry had changed. And again, it's our position that that's another issue that clearly would have been um, light would have been shined on that, no pun intended, if discovery had been allowed. And are you making any type of suggestion that the defendants had knowledge that Mr. Shuey was at the quarry at 1 30 in the morning? I am not making that allegation. No, Your Honor. Okay, thank you. Do you have anything further, counsel? No, Your Honor. Thank you for your time. Okay, then we'll proceed to hear from the appellee. Mr. Rayfelt, you may argue on behalf of the appellee, sir. Thank you, Your Honor. May it please the court. I represent both the defendants in this case, Rogers Ready Mix, the corporate defendant, and Robert Rogers, who's an employee of Rogers Ready Mix. The plaintiff filed a 10 count complaint against my client seeking to recover for the fatal injury suffered by the plaintiff's proceedings when he fell over the wall of the quarry on the and tragically plunged to his death on the rocks and gravel at the bottom of the quarry. According to the plaintiff's complaint, this accident happened at 1 30 in the morning after the plaintiff's decedent and a number of his friends had entered the property. There are no allegations in the complaint that the plaintiff's decedent entered the property with the knowledge or consent of the defendants, nor are there any allegations that any employee of Rogers Ready Mix was present on the property at the time of the accident. There were counts directed against both of the defendants, charging them with ordinary negligence and willful and wanton misconduct. In addition, the complaint sought to impose liability only on Rogers Ready Mix, the corporate defendant, under a theory that by building a fence that surrounded some sections of its property, Rogers Ready Mix had voluntarily assumed the duty to the plaintiff's decedent to build a fence surrounding the entire property. I'd like to address the allegations in the counts in the complaint that sounded an ordinary negligence first. As we've heard from plaintiff's counsel this morning and as plaintiff's counsel set forth in his apologies brief, plaintiff is not disputing that the plaintiff's decedent entered the property as a trespasser. Under the general rule in Illinois, the property owner owes no duty of ordinary care to a trespasser coming on his land. The sole duty owed is to refrain from willfully and wantonly injuring. However, there's an exception to this general rule, which has sometimes been referred to as the permitted trespasser exception. Under the permitted trespasser exception, a landowner may be found to owe a duty of ordinary care to a trespasser if it can be shown that a landowner knows or should know that trespassers frequently cross over a specific limited area of his property for the purpose of travel. The duty of ordinary care is extended in such cases under the theory that the landowner's continuous toleration of trespasses amounts to permission to make use of the land so that a plaintiff then is not deemed to be a trespasser when this exception applies, but rather is treated as a licensee. It's clear from the allegations in the plaintiff's complaint that he is seeking to avail himself of the frequent trespasser exception in this case. However, the exception doesn't apply here. The exception only applies where it can be shown that trespassers both constantly and persistently trespass over a specific portion of the landowner's land for the purpose of travel. The plaintiff's complaint attempts to invoke the exception by alleging the existence of three instances spread over the past 20 years where an unauthorized person entered the Rogers Ready mixed property. Three instances of unauthorized entrance spread over 20 years does not meet the requirement for constant and persistent trespass. Two of those three instances involve vandalism and therefore don't meet the requirement for trespass for the purpose of travel. Finally, each of those three instances of unauthorized entrance alleged in the complainant's complaint allegedly took place at three separate locations on the property owned by Rogers Ready mixed. In order for the trespasser exception to apply, all of the allegations regarding trespass have to have taken place over one narrow and same area of the landowner's property and that didn't happen in this case according to the allegations in the complaint. The trial court ruled that the permitted trespasser exception doesn't apply in this case and I believe the trial court correctly ruled in that matter. Because that trespasser exception doesn't apply and because there isn't any question that the plaintiff's decedent entered as a trespasser, it logically follows that the defendants owed no duty of ordinary care to the plaintiff's decedent and that the trial court therefore properly dismissed all the counts of the complaint that sounded an ordinary negligence. Furthermore, the trial court's dismissal of all of those counts would have been correct even if the plaintiff's decedent had not been a trespasser. Under Illinois law, a landowner owes no duty to warn anyone coming upon his land against dangers on the land that are deemed to be open and obvious dangers. This rule holds true for persons coming on the land as trespassers, as licensees, or as invitees. One of the dangers that is deemed as a matter of law to be an open and obvious danger is the falling from a height. According to the plaintiff's complaint, that is exactly the danger that the plaintiff's decedent encountered in this case when he fell over the wall of the quarry. The plaintiff argued in his appellant's brief that the danger presented by the quarry wall was not open and obvious because it was concealed by inadequate lighting. That argument was rejected by the trial court and could be rejected by this court as well. There are numerous cases which hold that a danger which is concealed only by darkness is not as a matter of law deemed to be a concealed danger. We have cited seven of those cases in our appellate's brief. I won't go through the facts of them here, but all seven can be found and are cited on page 20 of our brief. The trial court relied on some of those cases to hold that the danger of falling over the quarry wall encountered by the plaintiff's decedent was, as a matter of law, open and obvious, notwithstanding the fact that the plaintiff's decedent encountered that danger when it was dark out. We ask this honorable court to affirm the trial court's ruling in this regard. Counsel, if I may. Yes. Would you address the plaintiff's argument as it relates to misfeasance and non-feasance with regards to the fence? Yes, there are two counts of the complaint charging only the corporate defendant with breach of a voluntarily undertaken duty, and the allegations in the complaint assert that by building a fence surrounding only a portion of its property, the corporate defendant assumed a duty to the plaintiff to build a fence around the entire property. But as your honor, I believe, pointed out during plaintiff's argument, and as trial court pointed out, you cannot base a claim based on voluntary undertaking on an act of non-feasance. And the failure to build a fence is an act of non-feasance. That's what the trial court ruled, and I think that's obviously correct. What the defendant is charged with in those voluntary undertaking counts is the failure to build a fence surrounding the entire property. It's not that he built the fence that he built in some negligent way that injured the defendant, it's that he didn't build a fence. And I believe that definitely meets the definition of an act of non-feasance. I'd like to go on and address the counts of the complaint that sought to impose liability on the defendants for willful and wanton misconduct. There were two counts of the complaint that alleged that Rogers, excuse me, there were four counts of the complaint that charged the defendants with willful and wanton misconduct. All of them charged the defendants with failing to disclose the concealed danger of falling over the quarry wall and failing to erect the fence around the entire perimeter of the property so as to prevent the plaintiff's deceit from encountering the quarry wall. The trial court properly found that none of those four counts stated a cause of action for willful and wanton misconduct. The trial court made its in part because all four counts were based on a false premise, namely that the defendants had failed to warn against the concealed danger. As I mentioned a little bit ago, the danger of falling over a quarry wall was the danger of falling from a height. That danger as a matter of law has been deemed to be open and obvious. And the defendants owe no duty to the plaintiff's decedent to warn or guard him against open and obvious dangers. The fact that it was dark out when the plaintiff's decedent encountered the quarry wall did not turn the danger of falling over the wall from an open and obvious one into a concealed one. Since the defendants owe no duty to warn against open and obvious dangers, the trial court ruled that they could not be found liable for willful and wanton misconduct for their failure to do so. We ask this court to affirm the trial court's dismissal of all the counts of the plaintiff's complaint sounding willful and wanton misconduct. Thank you, counsel. Mr. Farnon, any rebuttal, sir? No rebuttal, your honor. Thank you. Okay, thank you, counsel. The court will accordingly take this matter under advisement and, of course, run their decision.